## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| ALLEN STEWART,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>CAPITAL ONE BANK (USA), N.A.; and EQUIFAX INFORMATION SERVICES, LLC,<br><br>　　　　　Defendants. | Case No. 0:22-cv-00383<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>**1.  FCRA, 15 U.S.C. § 1681 *et seq*.** |

Plaintiff Allen Stewart ("Plaintiff") brings this cause based on violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*., against Defendants Equifax Information Services, LLC ("Equifax") and Capital One Bank (USA), N.A. ("Capital One") (collectively, "Defendants").

## I.　　INTRODUCTION

1.　　Plaintiff's Complaint alleges that consumer reporting agency ("CRA") Equifax failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports, violating 15 U.S.C. § 1681e(b) and resulting in Equifax reporting inaccurate information about Plaintiff.

2.　　Plaintiff's Complaint also alleges that Equifax violated 15 U.S.C. § 1681i by failing to reasonably reinvestigate Plaintiff's consumer dispute, which resulted in Equifax continuing to report inaccurate information about Plaintiff.

3.　　Plaintiff's Complaint also alleges that Capital One, the furnisher of the

inaccurate information, violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation after receiving notice of Plaintiff's dispute from Equifax.

## II.     JURISDICTION AND VENUE

4.     This Court has federal question jurisdiction because this action arises out of violations of federal law. 28 U.S.C. § 1331, 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

5.     Venue in the District of Minnesota is proper pursuant to 28 U.S.C. § 1391 because Defendants regularly transact business within this District, are subject to personal jurisdiction in this District, and a substantial part of the events giving rise to the claims occurred in this District.  Plaintiff resides within this District.

## III.    PARTIES

6.     Plaintiff is a natural person residing in Washington County, Minnesota.

7.     Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

8.     Defendant Capital One is a financial institution engaged in the business of extending consumer credit and collecting debt. Capital One is also a "furnisher," as provided in 15 U.S.C. § 1681s-2.  Upon information and belief, Capital One is regularly engaged in the business of furnishing credit information to the credit reporting agencies. Capital One's principal place of business is headquartered in McLean, VA.

9.     Defendant Equifax is a "consumer reporting agency," as defined by 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of consumer reports, as defined in 15 U.S.C. § 1681a(d)), to third parties in

exchange for monetary compensation.  Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309.

10.     At all relevant times, Defendants acted through duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

11.     Defendants' violations were not made in the good faith conduct of their business, but were negligent, willful, in reckless disregard of the rights of Plaintiff, and/or intentional, because Defendants did not maintain procedures reasonably adapted to avoid any such violation.

## IV.     FACTUAL ALLEGATIONS

12.     The United States Congress has found that the banking system is dependent upon fair and accurate consumer reporting.  Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair consumer reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

13.     Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

14.     The FCRA is intended to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

15.     Equifax, one of the three major consumer reporting agencies in the United

States, regularly publishes and distributes credit information about Plaintiff and other consumers through the sale of consumer reports.

16.     Equifax's consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

17.     Equifax obtains consumer information from various sources. Some consumer information, such as authorized user information, is sent directly to Equifax by furnishers.

18.     The vast majority of institutions that offer financial services (*e.g.*, banks, creditors, lenders) rely upon consumer reports from CRAs (like Equifax) to make lending decisions.

19.     Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, and dates of delinquencies contained in CRAs' consumer reports.

20.     The information Equifax includes in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

21.     FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

22.     FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

     a.     "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist.  The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

     b.     The "amount of debt" a consumer owes has a major impact on his or her credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact the consumer's credit score.

23.     Lenders also consider a consumer's debt-to-income ratio (DTI) before deciding to extend credit or approve financing terms.

24.     DTI compares the total amount a consumer owes to the total amount a consumer earns.

25.     A consumer's income, however, is not included in his or her consumer report; only his or her amount of debt is.

26.     The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for a consumer to obtain credit and favorable credit terms (*e.g.*, higher interest and lower credit limits).

27.     Certain FICO Scores are also calculated using information associated with authorized user accounts, even though authorized users of credit cards have no obligation to pay down the associated balance.

28.     Equifax knows that it is inaccurate to report that a consumer is individually liable for and/or delinquent on a balance for an account where the consumer is merely an authorized user on the account.

29.     A history reflecting delinquency or late payments on an authorized user account can negatively affect the authorized user's creditworthiness.

*Allegations Specific to Credit Reporting of Plaintiff*

30.     At some point in 2019, Plaintiff and his wife, Jennice Stewart ("Mrs. Stewart"), became authorized users of a credit card issued and serviced by Capital One, account ending in *******7581* and opened in June 2019 (the "Capital One Account").

31.     Plaintiff's cousin was the owner of the Capital One Account.

32.     In July 2021, Plaintiff and Mrs. Stewart obtained a copy of their consumer

6

reports from Equifax, Experian Information Solutions, LLC ("Experian"), and Trans Union, LLC ("Trans Union"), and learned that Equifax and Trans Union were reporting the Capital One Account on their credit reports.

33.    In the Capital One Account tradeline in each report, the account specifically was reported with a $577 balance being paid as agreed.

34.    The reporting of the Capital One Account on Plaintiff and Mrs. Stewart's consumer reports was erroneous because they were merely authorized users on the account.

35.    Notably, Experian did not erroneously report the Capital One Account like Trans Union and Equifax did.

### *The Disputes*

36.    On or around August 25, 2021, Plaintiff and Mrs. Stewart mailed letters to Trans Union and Equifax disputing, *inter alia,* the inaccurate reporting of the Capital One Account.

37.    The dispute letters each stated, *inter alia*, that Plaintiff and Mrs. Stewart were not responsible for payments on the Capital One Account, and that Plaintiff and Mrs. Stewart were only authorized users of the account.

38.    Equifax and Trans Union each received the dispute letters, which Plaintiff sent by traceable U.S. mail.

39.    Upon information and belief, Equifax and Trans Union forwarded the dispute letters to Capital One within five days of receipt.

40.     In response to the August 2021 disputes, Trans Union confirmed that the Capital One Account was not a proper account to report on Mrs. Stewart's consumer report, and corrected the error by deleting the account from his consumer reports.

41.     Trans Union, furthermore, also confirmed that the Capital One Account was not a proper account to report on Plaintiff's consumer report, and corrected the error by deleting the account from his consumer report.

42.     Equifax, however, inexplicably did not respond to Plaintiff's August 2021 dispute letter, verified the reporting of the Capital One Account as accurate, and did not correct the inaccuracy that Plaintiff had disputed.

43.     When Plaintiff reviewed his Equifax consumer report dated November 30, 2021, the Capital One Account was reporting with a $726 balance (more than the available $500 credit limit on the account) and a status of "over 120 days past due."

44.     Upon information and belief, Equifax did not reinvestigate Plaintiff's dispute of the Capital One Account.

45.     Instead, pursuant to its unreasonable procedures, Equifax merely forwarded an automated dispute form to Capital One when Plaintiff disputed the Capital One Account.

46.     Rather than conducting the reinvestigation required by the FCRA, Equifax merely parroted whatever information Capital One furnished back.

47.     Equifax is aware that it is a violation of the FCRA to merely parrot the information supplied by the furnisher without conducting a reasonable reinvestigation.

48.     Upon information and belief, Equifax had actual knowledge that Plaintiff

was merely an authorized user rather than an individual owner of the Capital One Account.

49.     The consumer reporting by Equifax made it appear that Plaintiff had encumbered all of the debt attributable to the Capital One Account and that he was responsible for the debt.

50.     Trans Union corrected the disputed information after receiving a virtually identical dispute letter from Plaintiff.

51.     Equifax's conduct is particularly egregious here because Equifax itself corrected the same disputed information for Mrs. Stewart after receiving a virtually identical dispute letter from Mrs. Stewart.

52.     Upon information and belief, Capital One likewise failed to conduct a reasonable investigation after receiving notice of Plaintiff's dispute from Equifax and Trans Union.

53.     Capital One received Plaintiff's dispute letter from Equifax and erroneously responded that the disputed information on Plaintiff's consumer report was correct.

54.     Capital One failed, among other things, to review (or intentionally ignored) all relevant information regarding the dispute.

55.     Capital One was in direct possession of information that indicated that the disputed information was inaccurate, but failed to locate this information or deliberately ignored this information.

56.     Upon information and belief, Capital One intentionally reported the Capital One Account to make it look like Plaintiff was responsible in order to extract money from

him that it knew it was not entitled to extract.

57.     Consequently, Capital One continued to furnish inaccurate data to Equifax despite possessing: a) information from which Capital One could have reported the Capital One Account accurately; and/or b) actual knowledge of the falsity of the information Equifax was reporting.

58.     Both Equifax and Capital One know that an authorized user is not personally liable for the debt on an account and that it is misleading to report the authorized user as liable for derogatory debt after the consumer has disputed the reporting as inaccurate.

59.     Equifax had reason to know that the reporting was inaccurate the moment it started to report the Capital One Account as individually owned because it noted that Plaintiff was merely an authorized user in the status section of the tradeline.

60.     Equifax inaccurately reported that an account that Plaintiff did not own, and inaccurately reported the account in a way that would adversely affect Plaintiff's creditworthiness and credit scores due to the outstanding, delinquent balance and status of the account.

61.     Equifax did not investigate Plaintiff's dispute, and pursuant to its unreasonable procedures, merely forwarded automated dispute forms to Capital One when Plaintiff disputed the Capital One Account and parroted whatever information Capital One furnished back to them.

62.     Upon information and belief, Capital One failed to conduct a reasonable investigation after receiving notice of Plaintiff's dispute from Equifax.

63.     Capital One's failure to report accurate information is particularly egregious as Capital One was notified of the inaccurate items of information through Plaintiff's disputes.

64.     Capital One also knows that an authorized user is not personally liable for the debt on that account and that it is misleading to report the authorized user as liable for derogatory debt after he or she has disputed the reporting as inaccurate.

65.     Equifax also knows that an authorized user is not personally liable for the debt on that account and that it is misleading to report the authorized user as liable for derogatory debt after he or she has disputed the reporting as inaccurate.

66.     Defendants inaccurately reported that Plaintiff was an owner of an account that he did not own, and inaccurately reported the Capital One Account in a way that would adversely affect Plaintiff's creditworthiness and credit scores due to the outstanding delinquent balance and status of the Capital One Account.

67.     Defendants' reporting of the Capital One Account on Plaintiff's consumer report was patently false and therefore inaccurate.

68.     If not patently false, Defendants' reporting of the Capital One Account on Plaintiff's consumer report is materially misleading and therefore inaccurate.

69.     Plaintiff specifically notified Defendants that he was only an authorized user of the Capital One Account and that the Capital One Account did not belong to him, but Defendants rejected this specific notice.

*Plaintiff's Injuries and Damages*

70.     Upon information and belief, had Equifax accurately maintained reasonable procedures to assure that the information it published about the Plaintiff was maximally accurate, Plaintiff would not have been denied/deterred from applying for a credit.

71.     Upon information and belief, had Defendants corrected or deleted information about the Capital One Account from Plaintiff's consumer reports when he disputed, Plaintiff's trended data, credit scores and/or DTI would have been better.

72.     Plaintiff has applied for credit and was denied based on the presence of the inaccurate reporting of the Capital One Account debt.

73.     Because of Defendants' conduct, Plaintiff believed he would not qualify for other credit and became fearful of applying for credit and being humiliated by a refusal therefor.

74.     Thus, Plaintiff stopped seeking credit while trying to get his consumer reports corrected.

75.     Defendants' inaccurate reporting of the Capital One Account, along with additional information belonging to Plaintiff, was published by Equifax to third parties.

76.     As a direct result of Defendants' inaccurate reporting, Plaintiff suffers economic injuries and resulting damages, including a decreased credit score, lower overall creditworthiness, and other financial and reputational harm.

77.     As a direct and proximate result of Defendants' conduct, Plaintiff was made to expend time finding documentation necessary to dispute the inaccurate Capital One Account.

78.     Additionally, Plaintiff suffers interference with daily activities, such as loss

of sleep, changes in appetite, and emotional distress, including, without limitation, emotional and mental, anguish, reputational harm, humiliation, stress, anger, frustration, shock, embarrassment, violation of privacy, and anxiety.

## V.   COUNT I
### Defendant Equifax
### Violations of the FCRA, 15 U.S.C. §§ 1681e(b), 1681i

79.     Based on the factual allegations in this complaint, Equifax has violated the FCRA in two important ways.

80.     The FCRA requires CRAs, like Equifax, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

81.     In this case, Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports and consumer files it published and maintained concerning Plaintiff.

82.     Equifax knew or should have known that the Capital One Account did not belong to Plaintiff and was appearing inaccurately in Plaintiff's consumer reports.

83.     Equifax knew or should have known that Capital One had furnished inaccurate and unreliable information in the past.

84.     Upon information and belief, Equifax did not investigate the accuracy of the information it received about Plaintiff, or any other information provided by Capital One, prior to publishing that information in a consumer report.

85.     Upon information and belief, Equifax did not undertake any independent

effort to determine whether Capital One complies with the FCRA.

86.     When Equifax reported the Capital One Account in Plaintiff's consumer report, it had an obligation to ensure it followed reasonable procedures to report the tradeline with maximal accuracy, including deleting the account when put on notice that the account did not belong to Plaintiff.

87.     These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and evidenced in prior cases involving Equifax from which it is on notice of its unreasonable procedures concerning the reporting of authorized user accounts.

88.     Equifax knows that authorized user accounts should not be included on consumer reports with delinquent information.

89.     Yet Equifax inaccurately reported the Capital One Account in Plaintiff's consumer report with a more than 120-day delinquent balance, despite knowing that Plaintiff was only an authorized user thereof.

90.     Equifax violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's consumer file and consumer reports.

91.     Equifax also violated 15 U.S.C. § 1681e(b) by failing to report accurate information when Equifax knew or should have known the information it reported was inaccurate, or otherwise contradicted by information known by Equifax, reported to Equifax, or reasonably available to Equifax.

92.     Even after Plaintiff notified Equifax of the inaccurate information it

included in Plaintiff's consumer files, Equifax continued to inaccurately report the Capital One Account with an outstanding balance which was more than 120 days delinquent.

93.     Equifax's inaccurate reporting was particularly egregious because it had the ability to independently confirm that the Capital One Account should not have been included in Plaintiff's consumer file by reviewing its own records.

94.     Equifax further failed to follow reasonable procedures, as 15 U.S.C. § 1681e(b) requires, by unreasonably relying on the furnisher, where, as here, Equifax independently possessed information confirming that the Capital One Account did not belong to Plaintiff and did not belong on Plaintiff's consumer reports, including the dispute letter from Plaintiff.

95.     Equifax's violations of 15 U.S.C. § 1681e(b) were willful because, upon information and belief, it has long been on notice that its procedures fail to adequately ensure maximal accuracy as to an Authorized User's status.

96.     Equifax has not changed its procedures despite knowing the danger its procedures pose to consumers.

97.     At a minimum, once Equifax was on notice of the unreliability of the information as a result of Plaintiff's disputes, it had no reason to rely on the continued reporting of the inaccurate Capital One Account by Capital One.

98.     Equifax's conduct was particularly egregious here because it corrected the same error on Mrs. Stewart's credit report based on a virtually identical dispute letter.

99.     Alternatively, Equifax's violations of 15 U.S.C. § 1681e(b) were negligent.

100.    When a consumer disputes the accuracy or completeness of information

included in a CRA's consumer file, the FCRA requires the agency to either conduct a reasonable reinvestigation into the disputed information **or** delete the disputed information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

101.    When conducting its reinvestigation of disputed information in a consumer report, the consumer reporting agency is required to "review and consider all relevant information submitted by the consumer."

102.    Additionally, the CRA must notify the person who furnished the disputed information of the consumer's dispute within five business days of its receipt. When notifying the furnisher of the consumer's dispute, the CRA is to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

103.    Thus, in addition to violating the FCRA by failing to follow reasonable procedures as 15 U.S.C. § 1681e(b) requires, Equifax also violated the FCRA by failing to perform a reasonable reinvestigation of the Capital One Account even after Plaintiff notified it of the inaccurate information in Plaintiff's consumer file.

104.    Equifax's violations of 15 U.S.C. § 1681i include, but are not limited to the following:

(a)    Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.

(b)    Failing to consider all relevant information while investigating Plaintiff's dispute.

16

(c)     Failing to include all relevant information when notifying Capital One

of Plaintiff's dispute.

105.    Equifax's inaccurate reporting damaged Plaintiff's creditworthiness.

106.    Plaintiff suffers actual damages as a result of the injuries proximately caused by Equifax's conduct, including a decreased credit score, loss of credit opportunities, credit denial, and other reputational and financial harm caused by the inaccurate reporting of an outstanding and delinquent balance in Plaintiff's consumer reports for a debt that did not belong to Plaintiff.

107.    Plaintiff also suffers interference with daily activities and emotional distress caused by other harm, including, but not limited to, loss of sleep, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

108.    Equifax is a direct and proximate cause of Plaintiff's injuries and resulting damages.

109.    Equifax is a substantial factor in Plaintiff's injuries and resulting damages.

110.    Equifax's acts, as described above, were done willfully and knowingly; or alternatively were committed negligently.

111.    Therefore, Equifax is individually liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq.*

## VI.    COUNT II

**Defendant Capital One**
**Violations of the FCRA, 15 U.S.C. § 1681s-2(b)**

112.    Based on the factual allegations of this Complaint, Plaintiff has stated a cause of action against Capital One for violations of the FCRA by failing to conduct a reasonable investigation of the Plaintiff's disputes.

113.    The FCRA requires furnishers of information like Capital One to conduct an investigation with respect to disputed information, review all relevant information, and report the results of the investigation to the consumer reporting agency. If the investigation reveals the information is incomplete or inaccurate, it must report those results to all consumer reporting agencies to which the furnisher has provided inaccurate information.

114.    Capital One knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, promulgated by the Federal Trade Commission, and evidenced by case law.  Capital One obtained or had available substantial written materials that apprised it of its duties under the FCRA. Despite knowing these legal obligations, Capital One acted consciously in breaching its known duties and deprived Plaintiff of his rights under the FCRA.

115.    Plaintiff disputed the Capital One tradeline through Equifax and Trans Union.

116.    Thereafter, Equifax and Trans Union forwarded Plaintiff's disputes to Capital One, notifying Capital One that Plaintiff was disputing the information it had furnished about the Capital One Account.

117.   Capital One received notice of Plaintiff's dispute and failed to reasonably investigate or otherwise take corrective measures, despite possessing all relevant knowledge regarding the dispute.

118.   Capital One verified its inaccurate reporting in response to Plaintiff's dispute, despite possessing actual knowledge that the information Plaintiff disputed was inaccurate or being in possession of information from which Capital One could readily discern that the information Plaintiff disputed was inaccurate.

119.   Upon information and belief, Capital One continued to furnish inaccurate information about Plaintiff to Equifax even though Capital One possessed all relevant information about the Capital One Account and the inaccuracy that Plaintiff disputed.

120.   The inaccurate Capital One Account materially and adversely affected Plaintiff's credit standing.

121.   On at least one occasion within the past two years, by example only and without limitations, Capital One violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's dispute to Equifax.

122.   Capital One violated sections 15 U.S.C. §§ 1681n and 1681o of the FCRA by engaging in willful and negligent noncompliance of 15 U.S.C. § 1681s-2(a), (b), and engaging in conduct that violates 15 U.S.C. § 1681s-2(a), (b), including:

    (a)   Willfully and negligently failing to conduct an investigation of Plaintiff's dispute, despite possessing knowledge, information, and records to substantiate Plaintiff's dispute;

    (b)   Willfully and negligently failing to review all relevant information

concerning Plaintiff's dispute;

(c)     Willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

(d)     Willfully and negligently failing to report to Equifax that the disputed information is indeed inaccurate;

(e)     Willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all consumer reporting agencies concerning the inaccurate information disputed by Plaintiff;

(f)     Willfully and negligently continuing to furnish and disseminate inaccurate credit, account and other information concerning the Plaintiff to the consumer reporting agencies despite actual knowledge of the falsity of the reported information; and

(g)     Willfully and negligently failing to comply with the requirements for furnishers of information enumerated in 15 U.S.C. § 1681s-2(b).

123.    Capital One unreasonably refused to take corrective measures required by the FCRA to correct and/or update Plaintiff's consumer information furnished to the national consumer reporting agencies.

124.    Capital One has long been on notice that it must conduct a searching inquiry when investigating a consumer's dispute, yet it chose to conduct only a meaningless, cursory investigation and verify the inaccurate Capital One Account.

125.    Plaintiff suffers actual damages as a result of the injuries proximately

caused by Capital One's conduct, including a decreased credit score, loss of credit opportunities, credit denial, and other reputational and financial harm caused by the inaccurate reporting of an outstanding and delinquent balance in Plaintiff's consumer reports for a debt that did not belong to Plaintiff.

126.   Plaintiff also suffers interference with daily activities and emotional distress caused by other harm, including, but not limited to, loss of sleep, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

127.   Capital One is a direct and proximate cause, as well as a substantial factor, in causing damage and harm to Plaintiff.

128.   Consequently, Capital One is liable to Plaintiff for the full amount of statutory, actual and punitive damages, as described herein and as allowable by law. Additionally, Plaintiff is entitled to his attorneys' fees and costs, as well as other such relief permitted by 15 U.S.C. § 1681n and § 1681o.

## VII.   <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants for the following:

(a)   Declaratory judgment that Equifax violated the FCRA, 15 U.S.C. § 1681e(b) and/or § 1681i;

(b)   Declaratory judgment that Capital One violated the FCRA, 15 U.S.C. § 1681s-2(b);

(c)   An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(d) An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(e) An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2);

(f) An award of costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(g) Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## VIII.  JURY DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this 9th day of February 2022,

By: *s/Jenna Dakroub*
Jenna Dakroub, MN # 0401650
**PRICE LAW GROUP, APC**
8245 N. 85th Way
Scottsdale, AZ 85258
E: jenna@pricelawgroup.com
Telephone: (818) 600-5513
Fax: (818) 600-5413
*Attorneys for Plaintiff,*
*Allen Stewart*